## Cuffee *v.* Department of Public Welfare.

504

■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■

Argued April 5, 1972, before President Judge Bow-man and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Richard S. Packel,* Delaware County Legal Assist-ance Association, for appellant.

*Barry A. Roth,* Assistant Attorney General, with him *Marx S. Leopold,* General Counsel, and *J. Shane Creamer,* Attorney General, for appellee.

Opinion by Judge Blatt, May 30, 1972:

This is an appeal from an adjudication and order of the Department of Public Welfare ("DPW") deny-ing appellant's request for an increase in her assistance benefits.

The appellant and her son, Otis, lived in a public housing development in Chester. The appellant received an income of $126.20 per month, consisting of a military allotment of $100.00 and a public assistance supplement of $26.20. This grant was based on a shelter allowance of $41.20, a food, clothing and incidentals allowance of $65.00, and a medical transportation grant of $20.00. Otis does not receive public assistance, but is paid Social Security benefits of $120.00 per month. The appellant pays a monthly rent of $82.40, but her monthly shelter allowance was only half that amount, because DPW Regulation 3211.31[1] provides that the shelter allowance will be reduced proportionately for all non-assistance persons living with the assistance recipient. The appellant requested that DPW increase her shelter allowance, arguing that the benefits Otis received could not be used for shelter and that Regulation 3211.31 was unconstitutional because DPW thereby treated recipients living in public housing differently than it did those living in private housing. Following a hearing, the Hearing Examiner denied the requested increase. DPW upheld the Examiner and adopted his findings of facts and conclusions of law. The appellant thereafter brought this appeal.

The DPW Order was issued on October 4, 1971. On November 1, 1971, the appellant's counsel filed an appeal form with this Court, which was returned to him with the notification that it was improperly filed without an accompanying statement of exceptions, and that the filing fee forwarded with it was insufficient. On November 12, 1971, the appellant filed a new notice of appeal, attached a statement of exceptions and en-

---

[1] "When the allowance is based on the project's average cost and non-assistance persons are living with assistance recipients, the allowance is the assistance units's proportionate share of what the allowance would be if all the persons living together were included in the assistance unit."

closed the proper filing fee. The appellant failed, however, to notify DPW of the appeal. DPW has now asked us to quash this appeal, and for the reasons stated below, we must grant this request.

Appeals from DPW are governed by the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.1, et seq. Prior to 1970, when the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, 17 P.S. §211.101, et seq., was adopted, it was clear that Section 42 of the Administrative Agency Law, 71 P.S. §1710.42, provided that the Pennsylvania Rules of Civil Procedure should apply to appeals taken under that Act. With the adoption of the Appellate Court Jurisdiction Act of 1970, however, the first sentence of Section 42 of the Administrative Agency Law, which so provided, was specifically repealed. At the same time, Section 502(e) of the Appellate Court Jurisdiction Act, 17 P.S. §211.502(e) provided that "Appeals and petitions for allowance of appeal shall be filed in such office and in such form as may be prescribed by general rule or rule of court." Also, Section 102(a)(4) of the Appellate Court Jurisdiction Act, 17 P.S. §211.102(a)(4) defined the term "general rule" as ". . . a rule or order promulgated by or pursuant to the authority of the Supreme Court." It seems clear, therefore, that the Pennsylvania Rules of Civil Procedure, specifically including Rule No. 4 which governs appeals from administrative agencies, come within this definition, and we must hold, therefore, that such appeals must meet the requirements of the said rule, which states specifically that any party, within thirty days of an adjudication by an agency ". . . may file an appeal therefrom and within said time take such exceptions to the adjudication of the agency as he may desire." Unless exceptions are filed as so provided, the Rule is not complied with and there can be no issue

properly before this Court.[2] In *State Board of Medical Education and Licensure v. Williams*, 63 Dauph. 94, 95-96 (1952); affirmed 172 Pa. Superior Ct. 448, 94 A. 2d 61 (1953), the Court said, "For this reason alone, since there is no issue before us, the Board's findings, conclusions and order cannot be here attacked by the defendant, and the Board's motion to dismiss the appeal must be sustained." We so find in the instant case as well.

While the appellant did file exceptions in this case, they were not filed until more than thirty days after the DPW adjudication, and, unless there were extenuating circumstances, such as fraud or misinformation supplied by the appellee, court or administrative personnel, the uniform time for appeal was thirty days, and any appeal taken after that time, therefore, would have to be quashed. *Pioneer Belting, Hose and Packing Corporation v. Commonwealth of Pennsylvania*, 2 Pa. Commonwealth Ct. 278 (1971). Not only did the appellant here fail to show that she had received any misinformation, but the fact is that she was notified by this Court a sufficient time prior to the expiration of the thirty days in order for her to have cured the fault noted in the first attempted filing: i.e., that the appeal filed was incomplete. We have no choice, therefore, but to grant the motion to dismiss the appeal.

We have also considered the issues raised by the appellant in her argument, however, and we find that they are without merit, even if the appeal could be allowed.

The appellant has argued that DPW improperly attributed her son's income to her, because Departmental Regulation 3234.622 restricts the use of such funds to meeting a child's individual needs. The appellant is

---

[2] *State Board of Pharmacy v. Zalstein*, 73 Dauph. 186 (1958); *Detwiler v. Sanitary Water Board*, 66 Dauph. 104 (1954).

mistaken, however, because DPW actually did not consider the son's income in ascertaining his mother's shelter allowance. The shelter allowance is in the same proportion to the rent for the unit as the number of recipients is to the total number of individuals living in the unit. The income and resources of such other individuals are not taken into account, for the purpose of this method of calculating the allowance, of course, is to prevent DPW from paying rent for individuals who are not entitled to receive assistance. Nor do DPW's actions put the appellant in the position of improperly using her son's income, for it is clear in the Regulation cited that the son's income may be used to meet his individual needs, and it is equally clear that a primary individual need is shelter. The appellant would certainly not be remiss in expending a reasonable portion of her son's income for that purpose.

The appellant has argued further that Regulation 3211.31 is in violation of the Equal Protection Clause of the United States Constitution, because it applies only to recipients living in public housing, while recipients living in private housing are covered by a different Regulation, No. 3211.3,[3] which computes shelter allowances differently. The constitutional standards in this area have been stated in *Groff v. Wohlgemuth*, 328 F. Supp. 1016 (E.D. Pa. 1971) : "To meet the test of equal protection of the laws, the state-imposed classification or regulation must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and the distinction drawn must be rationally related to furthering the purposes of the act in respect to which the

---

[3] "If assistance and non-assistance persons live together, the allowance is the actual amount the assistance unit is expected to pay, not to exceed the maximum for the number of persons in the assistance unit."

classification is established. Carrington v. Rash, 380. U.S. 89, 85 S. Ct. 775, 13 L. Ed. 2d 675 (1965); F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S. Ct. 560, 64 L. Ed. 989 (1920)." 328 F. Supp. at 1020. The differences between public and private housing seem sufficiently clear so that DPW could rationally draw a distinction between them for the purpose of calculating shelter assistance. Public housing is itself a form of assistance, while private housing is established for the purpose of making a profit for its owners. Rental rates are based on differing standards for each class of housing. The appellant has failed to show that these apparent distinctions are ill-founded or irrational, and we do not believe that the regulation applied is unconstitutional.

## ORDER

Now, May 30, 1972, the motion of the Department of Public Welfare is granted and the appeal of Mildred Cuffee is quashed.