City of Philadelphia Tax Review Board *v.* Harry D. Toben, Appellant.

524

Submitted on briefs, October 6, 1977, to Judges ROGERS and BLATT, sitting as a panel of two.

*Stephen C. Zivitz,* and *White and Williams,* for appellant.

*Sheldon L. Albert,* City Solicitor; *Stephen Arinson,* Chief Deputy City Solicitor; *Beryl E. Hoffman,* Deputy City Solicitor; *Stewart M. Weintraub,* Assistant

City Solicitor; and *Sally J. Bellet*, Assistant City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, November 30, 1977:

Harry D. Toben (Taxpayer) has appealed from an order of the Philadelphia Court of Common Pleas upholding the action of the Philadelphia Tax Review Board denying the prayer of his petition for review of a Department of Collection's ruling.

Taxpayer is a licensed real estate broker with offices in Philadelphia. He has associated with him in his office, a number of licensed real estate salesmen serving apprenticeships required for licensing as brokers. Section 6(b) of the Real Estate Brokers License Act (Act), Act of May 1, 1929, P.L. 1216, *as amended,* 63 P.S. §436(b). The salesmen conduct all of their real estate transactions in the name of the Taxpayer. The Taxpayer provides them with a desk and telephone and instructs them in business principles and selling techniques. Taxpayer does not set the salesmen's work schedule or otherwise control their daily business. The Taxpayer pays the salesmen a part of the commission he, the Taxpayer, receives on account of sales arranged by the salesmen. The Taxpayer does not pay social security or unemployment compensation taxes, nor does he withhold federal, state, or local taxes from the salesmen's commissions.

The City of Philadelphia (City) imposes a Mercantile License Tax upon the engaging in business within its geographical limits. Philadelphia, Pa. Code (Philadelphia Code), §§19-1001 et seq. In his Mercantile License Tax Returns for the privilege years 1966-71, Taxpayer did not include in his gross receipts for the tax base years 1965-70 those portions of his gross sales commissions which were "split" with the associate brokers or paid as commissions to the real estate salesmen. The Department of Collections disallowed

the "exclusion," as Taxpayer characterizes it, of the amounts paid to salesmen as commissions. Taxpayer's timely petition for review with the Tax Review Board was denied on February 22, 1973. Taxpayer filed an appeal with the Court of Common Pleas of Philadelphia County on March 21, 1973, but did not file exceptions to the Tax Review Board's decision until June 27, 1973. The City's motion to quash the appeal was denied by the court below, but the appeal was thereafter dismissed on the merits. A timely appeal to this Court followed.

At the outset, we must resolve a jurisdictional question raised by the City. The Philadelphia Code, §19-1706, provides:

Appeal from Decisions of Tax Review Board.
(1) Decisions of the Tax Review Board pertaining to compromises and waiver of interest or penalty shall be final and conclusive and shall not be the subject of further review by any Court.
(2) Other decisions of the Tax Review Board may be appealed to any court of competent jurisdiction within 30 days after the mailing of notice of such decision or action to the petitioner or his attorney by the Tax Review Board.

Rule 1(a) of the Philadelphia County Civil Rules provides:

Unless otherwise provided by law, by these rules or by special order of the court, the practice and procedure in appeals from administrative agencies of the City of Philadelphia and other like bodies from which appeals are allowed by law, shall be taken and prosecuted in the same manner as provided by Rules 1 to 13 of these rules relating to appeals from administrative agencies of the Commonwealth, subject

to such substitutions and adaptations of the language of said rules as may be necessary with respect to the terminology, identities, designations and titles of the agencies and officials to, or upon whom, process or notice is required therein to be directed, served, or given.

The "Rules 1 to 13" referred to by Rule 1(a) are Rules 1 to 13 of the Pennsylvania Rules of Civil Procedure (rescinded effective June 23, 1975, subsequent to commencement of the present case). Rule 4 thereof provided:

> Within *thirty days after the service of an adjudication* by an agency upon a party he may file an appeal therefrom *and within said time take such exceptions to the adjudication* of the agency as he may desire. The appellant shall furnish to the Prothonotary two copies of his exceptions for service upon the agency and the Attorney General. (Emphasis added.)

The Taxpayer filed an appeal from the Tax Review Board's decision within the 30 days specified by Section 19-1706 of the Philadelphia Code. He failed to file exceptions until 125 days after the Board's decision. The City says that the Taxpayer failed to *perfect* his appeal within the 30-day limit and that the appeal was thus untimely and should have been quashed below, and should be quashed by us. We disagree.

The City relies upon *Cuffee v. Department of Public Welfare,* 5 Pa. Commonwealth Ct. 503, 291 A.2d 549 (1972), where we held that the appellant's failure to file exceptions within the time prescribed by Rule No. 4 precluded our consideration of the appeal. The City's reliance is misplaced. The timeliness of an appeal and compliance with *statutory* provisions which grant the right of appeal go to the jurisdiction of an

appellate court and its competency to act. *Commonwealth v. Bey,* 437 Pa. 134, 136, 262 A.2d 144, 145 (1970); *Commonwealth v. Yorktowne Paper Mills, Inc.,* 419 Pa. 363, 368, 214 A.2d 203, 205 (1965). In *Cuffee,* the Pennsylvania Rules of Civil Procedure were made applicable to the manner of taking an appeal by way of the express direction of Section 502(e) of the Appellate Court Jurisdiction Act of 1970[1] that "[a]ppeals and petitions for allowances of appeal shall be filed in such office and in such form as may be prescribed by general rule or rule of court."[2] In the present case, we realize that the Philadelphia Home Rule Charter has the status of an act of the General Assembly and the ordinances passed to supplement and carry out its provisions may be deemed "statutory" in nature. *See City of Philadelphia v. Kenny,* 28 Pa. Commonwealth Ct. 531, 546, 369 A.2d 1343, 1351-52 (1977); *Philadelphia v. Sam Bobman Department Store Co.,* 189 Pa. Superior Ct. 72, 81-82, 149 A.2d 518, 523 (1959). However, Section 19-1706 of the Philadelphia Code does nothing more than provide a right of appeal within 30 days of the Tax Review Board's decision. Former Rules 1 to 13 of the Pennsylvania Rules of Civil Procedure are made applicable to such appeals only by way of another court rule, viz., Rule 1(a). As such, we conclude that the requirements of those rules, as they apply to the present case, are purely procedural in nature and are, therefore, subject to Pa R.C.P. No. 126, which provides:

The rules shall be liberally construed to secure the just, speedy and inexpensive determi-

---

[1] Act of July 31, 1970, P.L. 673, *as amended,* 17 P.S. §211.502(e).

[2] The Appellate Court Jurisdiction Act of 1970 governs only the jurisdiction of the Supreme, Commonwealth and Superior Courts, and Section 502(c) would not be applicable to an appeal *to* a court of common pleas, such as in the present case.

nation of every action or proceeding to which they are applicable. *The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.* (Emphasis added.)

Given, as even the City's brief notes, that the only real issue before the Tax Review Board was the narrow question of whether commissions paid by Taxpayer to salesmen should be included within his gross receipts, we do not believe the City suffered any prejudice to its rights by the lower court's decision to disregard Taxpayer's failure to file timely exceptions to the Tax Review Board's two-word order denying his petition. We detect no abuse of discretion by the lower court.

On the merits of Taxpayer's appeal to this Court, we must agree with the decision of the court below and affirm.

Section 19-1003 of the Philadelphia Code imposes a tax on the gross volume of business transacted within the City. "Gross volume of business" is defined as the "gross receipts of a business. . . ." Section 19-1001(6). "Gross receipts" is defined as " [c]ash, credits and property of any kind or nature received in, or attributable to, Philadelphia from any business or by reason of any sale made or service rendered or commercial or business transaction occurring in Philadelphia." Section 19-1001(5). Several express "exclusions" from the definition of gross receipts are provided by Section 19-1001(6), but none relate to Taxpayer's situation. Taxpayer relies upon Mercantile License Tax Regulation 303(a)(7), which provides:

A broker may exclude any commission paid by him to another broker on account of a contract of purchase or sale initiated, executed or cleared in conjunction with the other broker,

except where either is an employee of the other. Likewise, an agent may exclude any commissions paid by him to another agent on account of a contract of purchase or sale initiated, executed or cleared in conjunction with the other agent, except where either is an employee of the other.

At the outset, we note that the parties disagree as to whether the regulation provides an exclusion or an exemption from taxability, the former imposing a lighter burden of proof upon the taxpayer because exclusions are strictly construed against the taxing authority. *Tyger & Karl Complete Water Systems Co. v. Commonwealth*, 5 Pa. Commonwealth Ct. 154, 163 (1972).[3] We do not believe it necessary to decide that question, however, as we conclude that Taxpayer's situation is excluded from the scope of Regulation 303(a)(7) by the clear meaning of its terms.

It is to be noted that only amounts paid by a broker to a broker or by an agent to an agent are omitted from the tax base by the regulation. Amounts paid by a broker to an agent are not within the "exclusion" provided by it. Taxpayer attempts to bring himself within the regulation by arguing that the "real estate salesmen" involved here are "brokers" within the meaning of the regulation. Taxpayer points out, correctly, that the regulation is a general one, not specifically tailored for any particular type of brokerage business, and that, absent any specific definition in the ordinance, the term "broker" should be given the general definition of "one whose business it is to bring buyer and seller together."[4]

---

[3] The cited case does not, for some reason, appear in the Atlantic Reporter System or in Shepards Citations.

[4] *Williams and Co., Inc. v. Pittsburgh School District*, 430 Pa. 509, 511, 244 A.2d 37, 38 (1968).

While we do not disagree with Taxpayer's definition of "broker" or that his salesmen functionally come within it, to allow him to prevail on that basis would require us to ignore the rest of Regulation 303 (a)(7) and the facts.

Because a broker is also, in fact and in law, an "agent" for the client with whom he deals,[5] it is obvious that the regulation addresses itself to two different types of agency relationships which may be involved in purchase or sale transactions. One who is a "broker" between the buyer and seller of property can also be a principal or agent in another agency relationship involved in the same transaction. In the present case, we believe that Taxpayer's salesmen function in the role of Taxpayer's agents, as well as "brokers" within the general meaning of that term. Taxpayer and his salesmen entered into their working relationship by mutual consent. All real estate transactions in which the salesmen participate are conducted in Taxpayer's name and pursuant to his capacity as a licensed real estate broker. They are based in his office and conduct business through it. The proceeds of their real estate activities belong to Taxpayer, who remunerates them via commissions. While it is true that the City conceded below that Taxpayer's salesmen were "independent contractors," as opposed to employes,[6] an independent contractor may, in some but not all cases, be legally classified as an agent.

---

[5] *Brown & Zortman Machinery Co. v. Pittsburgh*, 375 Pa. 250, 100 A.2d 98 (1953).

[6] Both the City and the court below are of the view that Taxpayer also fails to come within Regulation 303(a)(7) because his salesmen are his "employees." While it is true that the Real Estate Brokers License Act refers to salesmen serving an apprenticeship as employees of the licensed broker, this is not conclusive for tax purposes. In fact, even aside from the City's concession below that the salesmen were not employees, we do not believe that the salesmen

*Commonwealth v. Minds Coal Mining Corp.*, 360 Pa. 7, 60 A.2d 14 (1948). We conclude this to be true in the present case. *See Minds Coal, supra.* Because Regulation 303(a)(7) provides only for omission from the tax base of commissions paid by a broker *or* by an agent to an agent, we must conclude that commissions paid by Taxpayer (a broker) to his salesmen (agents) do not fall within the regulation and must be included within Taxpayer's gross receipts.

We affirm.

### ORDER

AND Now, this 30th day of November, 1977, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated February 27, 1976, is hereby affirmed.

---

would fall, under the present facts, within the common-law definition of "employee." Nor would the conclusion that they are employees appear to be consistent with the City's own view of the definition of "employees" contained in Mercantile License Tax Regulation 311(a), which defines the employer-employee relationship in terms of whether the principal pays social security and unemployment compensation taxes and comes within the workmen's compensation law.